# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF **COLUMBIA**

FILED

AUG 14 2001

~~NANCY MAYER WHITTINGTON, CLERK~~
~~U.S. DISTRICT COURT~~

FATHER FLANAGAN'S BOYS HOME )
14100 Crawford Street )
BoysTown, NE 68010, )
                 )
        Plaintiff, )

    v.

THE DISTRICT OF COLUMBIA,
a Municipal Corporation,
One Judiciary Square
441 4th Street, N.W.
Washington, D.C. 20001, )
                 )

SHARON AMBROSE, )
Individually and as a Member of )
The City Council of the District of Columbia )
4414" Street, N.W., Room 710 )
Washington, D.C. 20001, )
                 )

WILBERT HILL, )
Individually, and as Chair, Southeast Citizens )
  for Smart Development )
Advisory Neighborhood Commissioner, SMD )
6B08 )
c/o ANC 6B )
921 Pennsylvania Avenue, S.E. )
Washington, D.C. 20003, )
                 )

POLICE SERVICE AREA 112 )
an Association of Persons, )
c/o Wilbert Hill )
ANC 6B )
921 Pennsylvania Avenue, S.E. )
Washington, D.C. 20003, )
                 )

CASE NUMBER 1:01CV01732

JUDGE: James Robertson

DECK TYPE: Civil Rights (non-employment

DATE STAMP: 08/14/2001

ECF

SOUTHEAST CITIZENS FOR SMART          )
DEVELOPMENT                           )
c/o Wilbert Hill, Chair               )
701 14th Street, S.E.                 )
Washington, D.C. 20003,               )
                                      )
ELLEN OPPER-WEINER,                   )
Individually, and as Vice Chair       )
Southeast Citizens for Smart Development )
c/o Wilbert Hill                      )
701 14" Street, S.E.                  )
Washington, D.C. 20003,               )
                                      )
ANDREW ALTMAN,                        )
Individually, and as Director         )
ELLEN MCCARTHY,                       )
Individually, and as Deputy Director  )
District of Columbia Office of Planning )
801 N. Capitol Street, N.W., 4th Floor )
Washington, D.C. 20001,               )
                                      )
        And                           )
                                      )
DEPARTMENT OF CONSUMER AND            )
REGULATORY AFFAIRS                    )
c/o David Clark, Director             )
941 N. Capitol Street, N.W.           )
Washington, D.C. 20001,               )
                                      )
        Defendants.                   )
                                      )

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, AND FOR DAMAGES

Father Flanagan's Boys Home ("Girls & Boys Town"), a nonprofit charitable entity

domiciled in the State of Nebraska and doing business in this District, for its Complaint, states

respectfully as follows:

## NATURE OF THE CASE

1.  This action is brought because Girls & Boys Town has been unlawfully obstructed, delayed, intimidated, interfered with and harassed in its efforts to build four homes in this District principally for handicapped minority children who have been abused, neglected and abandoned. Without this suit, that obstruction, delay, intimidation, interference and harassment will certainly continue.  Girls & Boys Town by this suit seeks to vindicate its rights — and the rights of the children it serves — as it attempts to carry out its charitable, lawful and important mission in the District of Columbia, free from discrimination on the basis of handicap and free from discrimination on the basis of race, as provided in the Fair Housing Act and amendments thereto (42 U.S.C. § 3601 et seq.).

2.  Specifically, this suit concerns the plans of Girls & Boys Town to construct, on its property fronting on the 1300 blocks of Pennsylvania and Potomac Avenues, S.E., four youth residential care homes for handicapped minority children. Each home is to have six child residents and a married couple domiciled therein, to provide the family-style setting in which to best assist these children.  Such homes are a type of community-based residential facility. The zoning of the property already allows such a use as a matter of right.  Nonetheless, by various official and unofficial actions, the defendants have, in numerous ways, acted to coerce, intimidate, threaten, obstruct, interfere with, delay and defeat the efforts of Girls & Boys Town to obtain the permits necessary to actually begin construction of these four homes, all in violation of the provisions of the Fair Housing Act's prohibitions against discrimination on the basis of race and handicap, as well as in violation of Girls & Boys Town's rights under the laws of the District of Columbia.  The aim of these obstructions and activities was perhaps best explained by District of Columbia council member, defendant Sharon Ambrose, in whose Ward 6 district the

property is located, who told the Washington Times, "Frankly, if you make it hard enough, they just might go elsewhere."

3.  But Girls & Boys Town will not go elsewhere. Instead, it is filing this complaint seeking injunctive relief to stop the intimidation and to require the prompt issuance of the building permits, to' obtain declaratory relief to secure its Fair Housing and other rights, to receive monetary damages to compensate it for the harm caused by defendants' unlawful actions and to deter future violations of the law, and most importantly, to fulfill its mission of serving those needy children who cannot speak for themselves.

PARTIES

4.  Plaintiff Father Flanagan's Boys Home is a non-profit Nebraska entity that does business in the District of Columbia, with its principal place of business at 14100 Crawford Street, BoysTown, NE 68010

5.  Defendant the District of Columbia ("the District") is a municipal corporation and is considered a person capable of being sued.

6.  Defendant Sharon Ambrose ("Ambrose"), domiciled in this District, is sued individually and in her capacity as a duly-elected member of the Council of the District of Columbia, representing Ward 6.

7.  Defendant Police Service Area 112 ("PSA 112") is an association of persons domiciled in this District.

8.  Defendant Southeast Citizens For Smart Development ("SCSD") is a District of Columbia not for profit corporation, operating in this District.

9.  Defendant Wilbert Hill ("Hill"), an individual domiciled in this District, is sued individually and as a commissioner of Advisory Neighborhood Commission ("ANC") 6B, a quasi-governmental entity. Mr. Hill is also Chair of Defendant SCSD, and is sued in that capacity as well.

10. Defendant Ellen Opper-Wiener ("Wiener"), an individual domiciled in this District, is sued individually, and as Vice-Chair of Defendant SCSD.

11. Defendant Andrew Altman ("Altman") is an individual domiciled in the District who is sued individually, and in his capacity as Director of the District of Columbia Office of Planning.

12. Defendant Ellen McCarthy ("McCarthy"), an individual domiciled in this District, is sued individually and as a Deputy Director of the District of Columbia Office of Planning.

13. Defendant Department of Consumer and Regulatory Affairs ("DCRA") is an agency of the District of Columbia government.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 3613. This action arises under the laws of the United States. This action also arises under the laws of the District of Columbia, and as to the claims thereunder, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

15. This Court also has jurisdiction based an diversity of citizenship under 28 U.S.C. § 1332. Girls & Boys Town is a citizen of the State of Nebraska; all defendants are diverse in citizenship from plaintiff. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

16. Venue is proper in this District under 28 U.S.C. § 1391(a) and(b), as all defendants reside in this District, the property which is the subject of this complaint is located in this District, and the actions giving rise to this complaint all occurred in this District.

FACTS

17. Girls & Boys Town is a non-sectarian charitable organization founded in 1917 by Father Edward J. Flanagan near Omaha, Nebraska.  It has a long history of offering help, hope and healing to abused, neglected, and handicapped children of all races and creeds.  Today, it also operates facilities in the states of New York, Pennsylvania, Rhode Island, Florida, Georgia, Louisiana, Texas, Nevada, California and Iowa. It also presently operates a facility in the District of Columbia, on Sargent Road, N.E.

18. The handicapped children who reside at the Sargent Road facility are referred to that facility by the District of Columbia Child and Family Services Agency.  This is the branch of District of Columbia government that is charged with and supervises the care of abused, neglected and abandoned children. The referrals are made pursuant to contracts between the District of Columbia and Girls & Boys Town (the "Sargent Road Contracts").

19. The handicapped children cared for by Girls & Boys Town at the Sargent Road facility are not violent or dangerous, nor do they have a history of being violent or dangerous. They are not referred to Girls & Boys Town by the juvenile justice system, and they

are not in Girls & Boys Town because of problems with violent behavior or the justice system. They are there because they are abused, neglected, or abandoned and, in most cases, handicapped. Accordingly, like all Girls & Boys Town facilities, including the proposed new facilities that are the subject of this suit, the Sargent Road facility is not a prison and does not lock up its residents.

20. The children to be served at the four proposed new Girls & Boys Town facilities will be drawn from the same population, and will have the same characteristics, as the children at the Sargent Road facility.

21. While Girls & Boys Town operates a large variety of programs to help children, its program most pertinent to this action provides long-term residential care homes. These are homes in which, typically, six handicapped children reside on a long-term basis with an adult married couple, domiciled in the same house, who act in the role of parent-teachers. Girls & Boys Town ensures that these children receive the educational, medical and other services needed for their proper care.

22. The children, both male and female, whom Girls & Boys Town exists, to serve and rehabilitate, are handicapped within the meaning of the Fair Housing Act as amended. The vast majority of them have mental or psychological disorders, such as mental retardation, emotional or mental illnesses, and specific learning disabilities, which substantially limit one or more of their major life activities, including but not limited to caring for themselves as appropriate, learning and working. Many of these impairments are common consequences of the abuse, neglect and abandonment that typically result in their coming to Girls & Boys Town.

23. The children served by Girls & Boys Town are also predominantly members of racial minorities, primarily African-American. This is particularly true of the children Girls & Boys Town presently serves in the District of Columbia and the children it will serve at its new facility in the District of Columbia.

24. By 1999, Girls & Boys Town determined to open additional homes in the District of Columbia. This determination was based upon the tremendous need for its services there. The District of Columbia has the second-highest rate of child abuse in the United States, second only to the State of Alaska. Abused children, along with neglected and abandoned children, are typically and properly removed from their homes and in need of residential care. Moreover, a great number of the District of Columbia children who end up in foster care or similar settings due to abuse, neglect, and abandonment have found themselves residing outside of the District of Columbia, due to the lack of needed facilities for them within the District. In fact, District of Columbia Mayor Anthony Williams recently announced a program aimed at returning to the District approximately 1,100 children who are natives of the District but who had to be placed outside of the District due to this lack of facilities.

25. In furtherance of its decision to open new homes in the District of Columbia, Girls & Boys Town made inquiries as to various possible sites for such homes, and ultimately decided to purchase the property in the 1300 block of Pennsylvania Avenue, S.E.

26. The Pennsylvania Avenue location is a good site for the new homes. It is spacious enough to allow for the construction of the various buildings needed, and to still allow for some needed open green space. It has essentially been an abandoned or underutilized parcel,

without any significant development or use, for several decades. It is close to a Metro station. And it is proximate to the areas from which many of its residents will come.

27. Equally important, the property was and is commercially zoned C-2, a zoning designation that allows facilities of the nature planned by Girls & Boys Town to be constructed as a matter of right, so that no zoning change or variance or special, exception or waiver is needed from the District of Columbia for construction of the facilities.

28. Accordingly, on February 10, 2000, Girls & Boys Town purchased the property in the 1300 block of Pennsylvania Avenue, consisting of approximately two acres.

29. Thereafter, Girls & Boys Town engaged an architectural firm, Esocoff & Associates, to develop plans for the new homes. Accordingly, Esocoff prepared an Illustrative Site Plan for the proposed four long-term residential homes, which includes parking, and recreational, green and open space. It also includes a short-stay residential facility along with an administration building, which will be added in a second phase of construction,.

30. Girls & Boys Town then determined that for the first phase of development of the property, it would construct the four long-term residential homes. Each is designed to house six children, plus a married couple.

3 1. Pursuant to this plan, Girls & Boys Town applied to Defendant DCRA for the building permits it needed in order to construct the four homes that it has a right to build on the property.

## THE CAMPAIGN TO STOP **GIRLS &** BOYS TOWN

32. Almost immediately upon learning of Girls & Boys Town's purchase of the property and its plans to house the handicapped, minority, abused and neglected children there, Defendants Ambrose, Weiner, Hill, PSAl12 and SCSD undertook, and continue to prosecute today, a campaign to prevent the issuance of the building permits which Girls & Boys Town has a right to obtain, to defame Girls & Boys Town, to harass Girls & Boys Town, to threaten, intimidate and interfere with Girls & Boys Town, to attempt to have Girls & Boys Town reduce the size of its planned facilities, and to have Girls & Boys Town abandon its plans to provide housing and care for the children it intends to serve. Ironically, despite the District's tremendous need for such facilities, defendants have adopted the "not in my back yard" attitude aimed at preventing this need from being met.

33. Specifically but not exclusively, defendants took the actions set forth in the paragraphs that follow.

34. Defendant Ambrose, the Ward 6 representative on the Council of the District of Columbia, publicly announced her opposition to the Girls & Boys Town development.

35. Ambrose attended and encouraged opposition meetings and other activities of the other defendants designed to foment further opposition to the Girls & Boys Town development.

36. Ambrose gave interviews and statements to the public media aimed at achieving the objectives recited above.

37. Purely for the purpose of imposing upon Girls & Boys Town harassment, delay, intimidation, interference and needless expense, Ambrose publicly advocated that the Girls & Boys Town project be subjected to a costly, time-consuming environmental impact study.

38. While acknowledging that the zoning of the property allows Girls & Boys Town to construct its facilities as a matter of right, Ambrose nonetheless told the Washington Times, and thus the other Girls & Boys Town opponents, "Frankly, if you make it hard enough, they just might go elsewhere."

39. Additionally, and in a farther attempt to coerce, intimidate, threaten, interfere with and harass Girls & Boys Town, in her capacity as an official of the government of the District of Columbia, Ambrose introduced a resolution for passage by the Council of the District of Columbia which would have the effect of canceling the contracts between the District of Columbia and the Girls & Boys Town facility at Sargent Road. Since the children served by Girls & Boys Town at Sargent Road are referred there exclusively by virtue of those contracts, such a resolution, if passed by the Council of the District of Columbia, would have effectively shut down the Sargent Road facility.

40. Ambrose had no good faith cause or basis on which to take such action. Girls & Boys Town was not in default of its obligations under the Sargent Road Contracts, and had never been placed in default or received any notice of any failure to comply with its obligations. The D.C. Child and Family Services Agency had not asked Ambrose to seek to have the contracts cancelled. Girls & Boys Town has at all times satisfactorily performed its obligations under the Sargent Road Contracts.

41. Ambrose's actions in this regard were purely acts of harassment, threat, interference, coercion and intimidation.  She could not have reasonably believed that her actions were lawful.

42. Defendant PSA 112, through various of its members including defendant Hill, conducted meetings, prepared petition drives, wrote letters and made calls and visits to government officials, organized protests, organized the preparation and distribution of "Stop Boys Town" signs, and gave statements and interviews to various media, all in attempts to accomplish the above-stated purposes. PSA 112 and its leaders also caused the creation of, and directed the activities of, defendant SCSD.

43. Defendant SCSD, composed primarily of members of PSA 112, formed itself for the exclusive and avowed purpose of stopping the Girls & Boys Town project.

44. SCSD's activities toward that end included, among others, the creation of a site on the World Wide Web, namely "www.stopboystown.org." Describing the prospective Girls & Boys Town residents as "troubled teenagers" and a "social burden," they published on the site untrue accusations and insinuations designed to stir up opposition to the Girls & Boys Town project, pilloried Girls & Boys Town for its refusal to provide information it had no obligation to provide, and encouraged people to pick up "No Boys Town" signs and to sign petitions opposed to Girls & Boys Town.

45. SCSD also urged visitors to their site "to call, write or email the mayor, and request that he not contract with Girls & Boys Town to provide services in D.C."

46. Defendant Hill is an ANC Commissioner (although the Girls & Boys Town project is not in the area that elected him). In that capacity, and in his capacity as a private citizen, as a member of PSA 112, and as Chair of SCSD, he was responsible for the above-cited discriminatory actions and the discriminatory actions of PSA 112 and SCSD, many of which were taken directly through him.

47. Defendant Weiner, in her capacity as a private citizen, and as Vice-Chair of SCSD, was responsible for the above-cited discriminatory actions of PSA 112 and SCSD, many of which were taken directly through her.

48. In addition, Weiner encouraged individuals in the District of Columbia Office of Planning, which has responsibilities related to permit issuance, to delay, obstruct, discourage, intimidate and create unlawful, unnecessary and pretextual roadblocks to prevent the proper and timely issuance of the Girls & Boys Town permits.

## THE DISTRICT RESPONDS TO THE PRESSURE

49. Defendant District of Columbia, and defendant DCRA, along with several of the various government agencies involved with DCRA in the permit issuing process, have consistently acted in such a manner as to arbitrarily delay the issuance of the permits, to impose unnecessary, time-consuming and expensive requirements on Girls & Boys Town as a precondition to granting the permits without any reasonable support in local laws or regulations, and generally to harass, intimidate, interfere with, threaten and discourage Girls & Boys Town in its efforts to get the building permits to which it is legally entitled. Highlights of these efforts are set forth in non-exclusive fashion in the paragraphs that follow.

50. Building permit applications in the District of Columbia are made to DCRA Although in certain circumstances, DCRA has the right to require that the permit applicant submit an "Environmental Impact Screening Form" ("EISF"), the Girls & Boys Town permit applications did not fall within the type of application for which, under District law, an EISF could be required

5 1. In fact, DCRA itself informed Girls & Boys Town that an EISF was not required.

52. Nonetheless, as weeks went by without issuance of the permits and without any indication of progress, inquiries revealed that there was ongoing an internal dispute between DCRA and the Department of Health, Environmental Protection Division (DOH), over the question of whether Girls & Boys Town could be required to submit an EISF, with DOH taking the position that an EISF was required.

53. DOH's position on this point was not supported by any law or regulation; rather, it was inspired and encouraged by, and resulted from, the actions of the other defendants who sought only to delay or halt the issuance of the permits.

54. Told that resolution of the dispute between DCRA and DOH could easily consume another 3-6 months by itself, Girls & Boys Town decided to take the only action that would moot the dispute and thus avoid such a long delay: it voluntarily submitted an EISF, while still preserving its well-founded position that one was not required.

14

55. An EISF is a multi-page fine-print government form that is submitted for review to the DCRA, which in turn distributes it to other District agencies including the Office of Planning.

56. Defendant McCarthy, the Deputy Director of the Office of Planning, has at all relevant times been actively involved in her office's activities regarding the Girls & Boys Town permit applications, and has been instrtnnental in the various actions of the Office of Planning described herein. Defendant Altman, Director of the Office of Planning, is responsible for the actions of his Office, including the acts of McCarthy.

57. McCarthy has used her position of authority within the Office of Planning to assist and encourage the opposition to Girls & Boys Town. This is not part of her job.

58. McCarthy has also, with the assistance and encouragement of other defendants, used her position to dream up and carry into action various obstructions, delays, and misapplications of District regulations governing the issuance of permits, for the purpose of intimidating, harassing, interfering with, delaying and discouraging Girls & Boys Town from obtaining its permits.

59. After it received the EISF, and after inordinate delay, the Office of Planning proceeded to inform Girls & Boys Town that it was making an inquiry into the history of calls to the police department relating to the Sargent Road facility.

60. Despite protests from representatives of Girls' & Boys Town that such an inquiry was outside of the lawful scope of the Office of Planning's review, the Office of Planning nonetheless took the.position that a) it had a right to make such an inquiry and b) it had

a right to deny even as-of-right permits, such as the ones sought by Girls & Boys Town, if it determined that the proposed project would burden police resources.

61. Both of these positions were without the slightest support in law, regulation, or the practice or precedent of the Office of Planning.  They were instead inspired and encouraged by the opposition of defendants Hill, Ambrose, Weiner, PSA112 and SCSD to the Girls & Boys Town development.

62. Pursuant to this concocted excuse for delay and possible denial, the Office of Planning actually met with police, department officials and gathered information about police calls to the Sargent Road facility.

63. What the Office of Planning learned from this inquiry, however, did not support any argument that the proposed development of four homes on Pennsylvania Avenue would be an inordinate drain on police resources.

64. Frustrated by this failure to find an excuse to seek to delay or deny the permits, the Office of Planning, again with the encouragement of the other defendants, struck upon a new strategy: requiring an archaeological evaluation.

65. An archaeological evaluation is a costly, time-consuming process requiring that the permit applicant engage professional archaeologists to research the history of a site and to make precise excavations therein to attempt to determine whether the site has any archaeological significance. Upon completing their evaluation, the archaeologists are then required to prepare a publicly available report.

66. In furtherance of this plan, the Office of Planning contacted the staff archaeologist of the Historic Preservation Division of the Office of Planning. The Historic Preservation Division had already approved the permit application long before. Despite the Division having already approved the development, Office of Planning demanded that it conduct a superficial site research and prepare a rationale for justification of an archaeological evaluation. The best justification the staff archaeologist could come up with, however, was that there might conceivably be archaeological value to the property because it was not distant from a site of such value.

67. Notwithstanding this lack of any legitimate justification, the Office of Planning instructed Girls & Boys Town that it was required to undertake an archaeological evaluation. Such a requirement imposes considerable trouble, delay and expense on Girls & Boys Town.

68. The Office of Planning would give no assurance, however, that even if an archaeological evaluation were done, the permits would thereafter be issued. Nor would it give any assurance that if an archaeological evaluation were done, it would not dream up some farther obstruction, delay or requirement to block the issuance of the permits.

69. In fact, the request for an archaeological evaluation is so unusual in a case like this as to be unprecedented. The Office of Planning had no sound reason to believe either that the site has archaeological value or that, even if it did have such value, that the Office of Planning has the legal authority to require such an evaluation in this case. It was just another tactic to delay, obstruct, harass, interfere and intimidate.

70. Nor has the Office of Planning, or DCRA, been willing to assure Girls & Boys Town that even if the demands of the Office of Planning were met – and any yet to be asserted demands of the Office of Planning and the other reviewing agencies were met-that Girls & Boys Town would not also be required to undergo an expensive, time consuming Environmental Impact Study for which there is no legal authority. Girls & Boys Town has reason to fear the worst, as defendant Sharon Ambrose, who occupies a position of political influence and power, has publicly advocated that such a requirement be imposed upon Girls & Boys Town.

71. In an apparent effort to create yet a further obstruction, again assisted and encouraged by some or all of the other defendants, the District was observed taking measurements, apparently in anticipation of taking the position that one or more aspects of the Girls & Boys Town development violates the so-called "500 foot rule."

72. This rule purports to prohibit community based residential facilities of seven or more residents from being located within 500 feet of each other.

73. This rule is unlawful, and in fact, several years ago the District entered into a consent agreement with the United States under which the District agreed that it would clarify the rule to make clear that it could not be used to preclude a community-based residential facility for handicapped residents from locating in the R-4 and all less restrictive districts (of which C-2 is one).

74. Notwithstanding its agreement, and although D.C. has repealed the rule as to some zoning designations, it has not repealed it as to the zoning designation applicable to the Girls & Boys Town property.

75. In fact, the District officials were recently observed measuring the distance between the Girls & Boys Town property and a nearby community-based residential facility.

76. The District is not entitled to apply its 500 foot rule so as to deny the permits which Girls & Boys Town is seeking, because (a) the rule is unlawful; (b) the District already agreed not to apply the rule; and (c) even if it were lawful as a threshold matter, the rule does not even apply to facilities such as those which Girls & Boys Town seeks to construct, which houses no more than six children.

77. The relevant laws and regulations of the District of Columbia contain deadlines for permit application processing that have been flaunted and ignored in this case.

78. Even with the normally expected delays beyond the statutory requirements, this permit process should have taken about four months.

79. Instead, the process has now consumed nearly eight months, with no end in sight.

80. In short, despite having followed all the local rules and laws and regulations concerning land use, zoning and permitting, Girls & Boys Town has found itself, due to the actions of defendants, inside of a deliberately designed bureaucratic maze whose exit is moved every time that Girls & Boys Town inches nearer to it.

## FACTS REGARDING DAMAGES

8 1. The most significant of the damages caused by the defendants has been the delay in Girls & Boys Town's ability to serve the handicapped, minority children who need its services. These damages, however, cannot be measured in money. Although this harm is

irreparable, this Court can prevent these damages from increasing by ordering the District of Columbia and specifically, the DCRA, to grant the requested permits.

82. Other damages caused by defendants, which are compensable in money, include but are not limited to the following:

a.   Lost revenues caused by the delay, which would have been used to help more children;

b.   Increased costs for construction of the four homes caused by the delay, resulting from increases in materials prices, increase in costs due to shifting construction to winter months, loss of subcontract commitments, and other factors; and

c.   Increases in attorneys' fees, costs, and other expenses for professional assistance beyond what would have been incurred had defendants not engaged in the above-recited wrongful conduct.

<u>COUNT 1</u>
<u>INTENTIONAL HANDICAP DISCRIMINATION IN VIOLATION OF FAIR HOUSING ACT</u>

83. Girls & Boys Town adopts and incorporates by reference each of the allegations in paragraphs 1 through 82 above.

84. The actions of all defendants as set forth above constitute intentional discrimination on the basis of handicap, in violation of the provisions of the Fair Housing Act, 42 U.S.C. § 3601 <u>et seq.</u>

## COUNT 2
## DISCRIMINATORY IMPACT ON BASIS OF HANDICAP IN VIOLATION OF FAIR HOUSING ACT

85. Girls & Boys Town adopts and incorporates by reference each of the allegations in paragraphs 1 through 82 above.

86. The actions of all defendants as set forth above have had and are having the effect and impact of discrimination on the basis of handicap, in violation of the provisions of the Fair Housing Act, 42 U.S.C. § 3601 <u>et</u> <u>seq</u>.

## COUNT 3
## INTENTIONAL RACE DISCRIMINATION IN VIOLATION OF FAIR HOUSING ACT

87. Girls & Boys Town adopts and incorporates by reference each of the allegations in paragraphs 1 through 82 above.

88. All defendants know that the children served by Girls & Boys Town are predominantly racial minorities, primarily African-American.

89. The actions of all defendants as set forth above constitute intentional discrimination on the basis of race, in violation of the provisions of the Fair Housing Act, 42 U.S.C. § 3601 <u>et</u> <u>seq</u>.

## COUNT 4
## DISCRIMINATORY IMPACT ON BASIS OF RACE IN VIOLATION OF FAIR HOUSING ACT

90. Girls & Boys Town adopts and incorporates by reference each of the allegations in paragraph 1 through 82 above.

91. The actions of all defendants as set forth above have the effect and impact of discrimination on the basis of race, in violation of the provisions of the Fair Housing Act, 42 U.S.C. 3601 § et seq.

## COUNT 5
## UNLAWFUL INTERFERENCE WITH CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 3617

92. Girls & Boys Town adopts and incorporates by reference each of the allegations in paragraphs 1 through 91 above.

93. The actions of all defendants above constitute coercion, intimidation, threatening, and interference in the exercise 'of the rights granted or protected under the Fair Housing Act, in violation of 42 U.S.C. § 3617.

## COUNT 6
## VIOLATION OF RIGHTS UNDER LAWS OF DISTRICT OF COLUMBIA

94. Girls & Boys Town adopts and incorporates by reference each of the allegations in paragraphs 1 through 93 above.

95. The actions of the District of Columbia recited above constitute misapplication and misinterpretation of the laws, rules and regulations of the District of Columbia, in violation of the rights of Girls & Boys Town, and those of its potential residents, thereunder, including Girls & Boys Town's and its potential residents' rights under the District of Columbia Human Rights Act, D.C. Code (2001) §§ 2-1401.01 et seq. and its laws, rules and regulations relating to the issuance of building permits.

## RESERVATION OF RIGHTS

96. As of the date of tiling this complaint, Girls & Boys Town has pending a permit application to the District of Columbia for expansion of the facilities on its Sargent Road property. Girls & Boys Town reserves its rights to amend this suit, or to file a separate suit, as may be needed to remedy Fair Housing Act violations or other violations of its legal rights with regard to that application.

### PRAYER FOR RELIEF

WHEREFORE, Girls & Boys Town respectfully requests that the Court award the following relief against all defendants jointly and severally:

a.  A declaration that all defendants have discriminated on the basis of handicap and race, in violation of the provisions of the Fair Housing Act;

b.  A declaration that all defendants have violated the rights of Girls & Boys Town under 42 U.S.C. § 3617 to be free from coercion, intimidation, threatening, or interference with the exercise of its rights under the Fair Housing Act;

c.  Preliminary and permanent injunctions against defendants and all persons acting on their behalf or at their direction, enjoining any and all farther discriminatory activities;

d.  A money judgment for compensatory and punitive damages;

e.  A money judgment for reasonable attorneys' fees;

    f.  A money judgment for all costs and expert fees;

    g.  Interest on the above amounts; and

    h.  All other appropriate relief as the Court deems just and proper in law

or equity.

As to defendants District of Columbia and DCRA, Girls & Boys Town farther prays for

the following additional relief:

    a.  A declaration that the District and DCRA have misapplied and misinterpreted

District laws, rules and regulations related to the issuance of building permits, and have violated

the District of Columbia Human Rights Act, all in violation of the rights of Girls & Boys Town

thereunder; and

b.  Preliminary and permanent injunctive relief, enjoining the District and DCRA from further delaying and obstructing the issuance of the requested permits, and ordering the District, through the DCRA, to issue the requested permits.

Respectfully submitted,

Paul J. Mirabile, D.C. Bar #427341
Ira J. Middleberg, D.C. Bar #430098
MIDDLEBERG RIDDLE & GIANNA
201 St. Charles Avenue, 31st Floor
New Orleans, LA 70170
Telephone: (504) 525-7200,

David J. Cynamon, D.C. Bar #182477
Deborah B. Baum, D.C. Bar #393019
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-I 128
Telephone: (202) 663-8772
Counsel for Father Flanagan's Boys Home

Document #: 1149818 v.4